| | |
|---|---|
| MICHAEL R. RAY, ) | Civil Action No.: 4:05-2904-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| EVERCOM SYSTEMS, INC., et al, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.    INTRODUCTION

This case challenges the contracts for inmate telephone services in South Carolina. The Complaint in this case alleges that several companies–Evercom Systems, Inc., Sprint Payphone Services, Inc., and Pay Tel Communications, Inc.–have conspired with the South Carolina Department of Corrections, the South Carolina Budget & Control Board, and six county correctional institutions to engage in anticompetitive conduct through the performance of exclusive contracts guaranteeing the provision of telecommunications services to inmates.  Plaintiff asserts causes of action for (1) violation of the Sherman Anti-Trust Act, (2) Monopolizing Trade in violation of 15 U.S.C. § 2, (3) Monopolizing Trade in violation of 15 U.S.C. § 2, (4) Breach of Duty of Loyalty, (5) Breach of Trust, (6) Unfair Trade Practices, (7) Negligence, and (8) Fraudulent Conveyances, Unjust Enrichment, Statutory Fraud.  Plaintiff, who is proceeding pro se, seeks more than $56 million in punitive and other damages from Defendants.

Presently before the Court are Defendants Evercom Systems Inc.'s and CEO of Evercom Systems Inc.'s Motion to Dismiss (Document # 27), South Carolina Department of Corrections',

South Carolina Budget and Control Board's and Sprint Payphone Services Inc.'s Motion to Dismiss

(Document # 52), Defendants Pay Tel Communications Inc.'s and John Vincent Townsend's Motion

for Summary Judgment (Document # 61), Defendants Evercom Systems, Inc.'s and CEO of Evercom

Systems, Inc.'s Motion to Dismiss (Document # 78), Defendant Florence County's Motion for

Summary Judgment (Document # 82), Defendant Lexington County's Motion for Summary

Judgment (Document # 83), and Plaintiff's Motion to Dismiss (Document # 121).

All pretrial proceedings in this case were referred to the undersigned pursuant to the

provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e),DSC. Because the

above Motions are dispositive, this Report and Recommendation is entered for review by the district

judge.

## II.     PROCEDURAL HISTORY

### A.     Initial Proceedings

Plaintiff filed this action along with several other Plaintiffs as a purported class action on

October 5, 2005. On December 21, 2005, the district judge entered an Order (Document # 7)

assigning separate civil action numbers for each Plaintiff and dismissed all Plaintiffs from this case

except for Ray. Plaintiffs moved for reconsideration (Document # 9) on January 3, 2006.

### B.     Defendants  Evercom Systems Inc.'s and CEO of Evercom Systems Inc.'s (Evercom Defendants) Motion to Dismiss

The Evercom Defendants filed a Motion to Dismiss (Document # 27) on February 21, 2006.

An Order (Document # 28) was entered pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir.

1975) (Roseboro Order) directing Plaintiff to respond to the Motion by March 28, 2006. Plaintiff

moved for an extension of time (Document # 49) until April 15, 2006, to respond to the Motion to

Dismiss. Plaintiff then filed a Motion to Stay (Document # 51) all proceedings on March 20, 2006, pending a ruling on his Motion for Reconsideration of the Order assigning separate case numbers. No substantive response addressing the arguments set forth in this Motion has been filed to date.

### C. South Carolina Department of Corrections', South Carolina Budget and Control Board's and Sprint Payphone Services Inc.'s (State Defendants) Motion to Dismiss

The State Defendants filed a Motion to Dismiss (Document # 52) on March 22, 2006. A Roseboro Order (Document # 53) was entered directing Plaintiff to respond by April 26, 2006. On April 10, 2006, Plaintiff filed a Response (Document # 56) to both Motions indicating that he was relying on his previously filed Motion to Stay to stay his responses to these Motions. To date, no substantive response addressing the arguments set forth in this Motion has been filed.

### D. Defendants Pay Tel Communications Inc.'s and John Vincent Townsend's (Pay Tel Defendants) Motion for Summary Judgment (Document # 61)

On May 30, 2006, the Pay Tel Defendants filed a Motion for Summary Judgment (Document # 61). A Roseboro Order (Document # 63) was entered directing Plaintiff to respond by July 5, 2006. On June 12, 2006, Plaintiff filed a Motion to Stay (Document # 75) all proceedings until his return to federal custody. He states that he had absolutely no files or records with him regarding this case. On June 15, 2006, Plaintiff filed a Motion to Stay (Document # 77) the response time for this Motion for Summary Judgment until he was returned to FCI Estill. To date, Plaintiff has failed to file any substantive response addressing the arguments set forth in this Motion.

### E. The Evercom Defendants' Motion to Dismiss (Document # 78)

The Evercom Defendants filed a second Motion to Dismiss (Document # 78) on June 19, 2009. The Evercom Defendants sought dismissal for Plaintiff's failure to respond to their first

Motion to Dismiss as well as the dispositive motions filed by the other Defendants. A <u>Roseboro</u>
Order (Document # 81) was entered directing Plaintiff to respond by July 25, 2006. On July 10,
2006, Plaintiff filed another Motion to Stay (Document # 85). Plaintiff stated that he was unable to
respond to any pleadings and had no access to legal texts. He asked the Court to take judicial notice
of the stay issued in another case filed by him. Outside the deadline and despite his requests to stay,
Plaintiff filed a Response (Document # 87) to this Motion to Dismiss on July 31, 2006.

### F.      Defendant Florence County's Motion to Dismiss (Document # 82)

On June 29, 2006[1], Defendant Florence[2] County filed its Motion to Dismiss (Document # 82).
A <u>Roseboro</u> Order (Document # 84) was entered directing Plaintiff to respond by August 8, 2006.
On July 10, 2006, Plaintiff filed the Motion to Stay (Document # 85) discussed above. On July 24,
2006, Plaintiff filed a Response (Document # 86) in opposition to the Motion to Dismiss. In the
Response, he reiterated his inability to respond.

### G.      Defendant Lexington County's Motion for Summary Judgment (Document # 83)

Defendant Lexington County filed a Motion for Summary Judgment on June 29, 2006. A
<u>Roseboro</u> Order (Document # 84) was entered directing Plaintiff to respond by August 8, 2006. On
July 10, 2006, Plaintiff filed the Motion to Stay (Document # 85) discussed above. On July 24, 2006,

---

[1]The original motions deadline was May 30, 2006, but both Florence County and
Lexington County filed Motions (Documents # 62, 68) to extend the deadline to June 29, 2006,
which the Court granted (<u>see</u> Documents # 70, 71). Plaintiff consented to the extension (<u>see</u>
Document # 74).

[2]The Motion was originally filed by Florence, Darlington, Dillon, and Williamsburg
Counties. However, Darlington, Dillon, and Williamsburg Counties have since been dismissed
from this action (<u>see</u> Documents # 196, 197, 200).

Plaintiff filed a Response (Document # 86) in opposition to the Motion for Summary Judgment. In the Response, he reiterated his inability to respond.

Plaintiffs first Motion to Stay (Document # 75) based upon his incarceration in New Jersey, was granted on August 25, 2006 (see Document # 91). The Court stayed the case until October 2, 2006, and directed Plaintiff to notify the Court if he had not been returned to federal custody or did not have access to his files by October 2, 2006.

### H.    Interlocutory Appeal

On August 25, 2006, the district judge entered an Order (Document # 89) denying the Motions for Reconsideration of the dismissal of the other Plaintiffs. That same date, the district judge also entered an Order (Document # 90) denying the request for class certification. On September 5, 2006, Plaintiff filed two Notices of Appeal (Documents # 92, 93), appealing the Court's ruling denying class certification and its ruling denying the motion to reconsider the dismissal of the other Plaintiffs. On September 25, 2006, Plaintiff filed an Amended Notice of Appeal (Document # 96). On October 2, 2006, Plaintiff filed a Notice of Change of Address (Document # 100), which indicated that he had been returned to Federal Custody at FCI Estill. On October 6, 2006, Plaintiff filed a Motion to Stay (Document # 105), even though he had been returned to federal custody, "due to the fact that there is presently an interlocutorial [sic] appeal . . . which could drastically effect the further proceedings of this case." The Fourth Circuit entered an Order (Document # 109) on January 1, 2007, dismissing Plaintiff's appeal, but the mandate was stayed because Plaintiff filed a Petition for Rehearing. On May 7, 2007, the Fourth Circuit entered

an Order (Document # 116) denying the Petition for Rehearing, and the Mandate and Judgment (Document # 117) was issued on May 16, 2007.[3]

## I.    Additional Motions to Stay or for Extension of Time

On August 6, 2007, Plaintiff moved (Document # 121) to dismiss the State Defendants without prejudice.  On August 15, 2007, Plaintiff filed a Motion for Leave to File an Amended Complaint (Document # 122).  On February 25, 2008, Plaintiff filed a Motion to Stay (Document # 132), asserting that he would soon be extradited back to the State of New Jersey and would not be able to access his files or respond to pleadings.  In an affidavit attached to the Motion, Plaintiff averred that he was scheduled for release from federal custody on April 14, 2008, he was personally involved in at least 17 federal court litigations, he possessed in excess of one hundred legal files relating to these litigations, and he was told that he could take nothing with him when he was extradited.  He further averred that he was required to mail his legal files to the "free-world," which would require him to send out 2-3 cases of materials each week, starting March 1, 2008.  On April 10, 2008, the court entered an Order (Document # 145) granting in part the Motion to Stay.  The Order provided that the case would be stayed until May 15, 2008.  Plaintiff was directed that he had until June 4, 2008, to respond to the outstanding dispositive motions.

On May 23, 2008, Plaintiff filed a Motion to Enlarge Stay (Document # 156).  He asserted that he was still unable to access his files and asked the court to extend the stay until at least October 2, 2008.  The undersigned entered an Order (Document # 157) denying the Motion but extending Plaintiff's time to respond to the outstanding motions until June 17, 2008.  Plaintiff Appealed (Document # 159) the Order to the district judge, who recommitted the matter to the undersigned

---

[3]The Mandate and Judgment was entered on this Court's docket on May 29, 2006.

(see Document # 160) on June 18, 2008, for further clarification as to the basis for his denial. On June 19, 2008, the undersigned entered a Supplemental Order (Document # 162), recounting the procedural history of the case and outlining his reasons for denying the motion. On June 20, 2008, the district judge affirmed the decision to deny Plaintiff Motion to Enlarge Stay (see Document # 164). The district judge gave Plaintiff an additional twenty days to respond to the outstanding Motions. Plaintiff then filed a Motion for Reconsideration (Document # 168) on July 1, 2008, asserting that the Supplemental Order "contains factual inaccuracies which unjustifiably discredit the facts supporting the Plaintiff's arguments for the stay and/or extensions," and that he was not allowed the opportunity to present the "true facts." Plaintiff also filed a Response (Document # 169) to the pending motions on July 14, 2008. In the Response, Plaintiff asserts that some issues are moot and others have been cured by the filing of his Amended Complaint.[4] Plaintiff argues for the first time that a continuance of the Motions is appropriate pursuant to Rule 56(f), Feed.R.Civ.P. On July 21, 2008, the district judge entered an Order (Document # 170) granting the Motion for Reconsideration and staying the case until October 2, 2008. The Order further directed Plaintiff to respond to all pending motions by October 3, 2008.

On August 4, 2008, Plaintiff filed a Motion (Document # 176) seeking a ruling on his pending motions prior to his responses to the dispositive motions.

On September 16, 2008, Plaintiff filed another Motion for Extension of Time (Document # 181) requesting that the stay be extended until 30 days after his release from custody of the New Jersey Department of Corrections. In an Affidavit attached to the Motion, he averred that he

---

[4]Plaintiff has not filed an Amended Complaint, but a Motion for Leave to File an Amended Complaint, which the Court has denied as untimely and for failure to show good cause in an Order filed herewith.

continued to be unable to access his files, he was parole eligible as of January 12, 2009, and the maximum expiration for his sentence was April 13, 2009. On November 11, 2008, the undersigned entered an Order (Document # 189) granting in part Plaintiff's Motion. The stay was continued until April 15, 2009, and Plaintiff was directed to file responses to the outstanding motions within fifteen days of that date. The undersigned warned that Plaintiff's case may be dismissed for failure to prosecute if he did not comply with the deadline. The Order further provided, "[a]ny circumstances that could cause further delay should be anticipated by the parties. No further stays or extensions will be granted."

On May 1, 2009, Plaintiff filed another Motion for Extension of Time (Document # 208), requesting that his response time be enlarged to June 30, 2009. He noted that he was released from custody on April 1, 2009, but that he had difficulties returning to South Carolina, finding transportation to the law library at the University of South Carolina, securing employment, and accessing his files. Plaintiff averred that he would consent to dismissal of his case with prejudice if he was unable to meet the requested June 30, 2009 deadline. The undersigned entered an Order (Document # 209) on May 4, 2009, denying Plaintiff's Motion but giving him until May 11, 2009, to file his responses. The Order provided that, "if Plaintiff fails to comply with this deadline, it will be recommended that this case be dismissed with prejudice pursuant to Rule 41(b)." On May 12, 2009, Plaintiff appealed (see Document # 212) to the district judge the undersigned's ruling. On May 15, 2009, the district judge denied Plaintiff's Appeal and affirmed the Order denying his Motion for Extension of Time (see Document # 218).

On May 19, 2009, Plaintiff filed an untimely Response (Document # 220) to the pending motions. Again, rather than addressing the arguments raised by Defendants in their motions,

Plaintiff requests that the Court reopen discovery and allow him additional time to conduct discovery and take up to ten depositions.[5]

While not every filing in this case has been documented here, those relevant to the Rule 41(b), Fed.R.Civ.P., discussion have been set forth. Furthermore, the Court is fully aware that there have been periods of time during the pendency of this case wherein there was inaction by both the parties and the Court.

## III. RULE 41(B), FED.R.CIV.P.

### A. Relevant Law

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders. Fed.R.Civ.P. 41(b)." <u>Ballard v. Carlson</u>, 882 F.2d 93, 95 (4th Cir.1989). "Federal courts possess an inherent authority to dismiss cases with prejudice <u>sua sponte</u>." <u>Gantt v. Maryland Division of Correction</u>, 894 F.Supp. 226, 229 (D.Md. 1995) (citing <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); <u>White v. Raymark Industs.</u>,

---

[5]In light of Plaintiff's numerous requests for extensions and or stays and this Court's multiple orders directing Plaintiff to respond, this request is patently unreasonable. The Scheduling Order (Document # 23) set a discovery deadline of April 19, 2006. Even though Plaintiff filed a Motion to Extend the Discovery Deadline (Document # 57) on April 17, 2006, discovery clearly was of little or no concern to Plaintiff. He first asserts the need for discovery in a Response (Document # 169) filed July 14, 2008, over two years after the last of the dispositive motions were filed. Further, in Plaintiff's last Motion for Extension of Time (that the district judge ultimately and unequivocally denied), Plaintiff requested an additional two months, until June 30, 2009, to file his Response and claimed that he would consent to dismissal if he was unable to comply with that deadline. Plaintiff did not mention a need for discovery at that time. Yet, on May 19, 2009, Plaintiff asserts that a continuance is appropriate pursuant to Rule 56(f), Fed.R.Civ.P., as he needs to conduct as many as ten depositions before responding to the Motions. Clearly, this most recent request for an extension is simply another delay tactic, and to the extent Plaintiff's request is deemed a motion, it is denied.

_Inc._, 783 F.2d 1175 (4th Cir.1986); <u>Zaczek v. Fauquier County, Va.</u>, 764 F.Supp. 1071, 1074 (E.D.Va.1991)).

The Fourth Circuit, in <u>Davis v. Williams</u>, 588 F.2d 69, 70 (4th Cir. 1978), recognizing that dismissal with prejudice is a harsh sanction which should not be invoked lightly, set forth four considerations in determining whether Rule 41(b) dismissal is appropriate: (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal. <u>Id.</u> at 70.

Subsequently, however, the Fourth Circuit noted that "the four factors ... are not a rigid four-pronged test." <u>Ballard</u>, 882 F.2d at 95. "Here, we think the Magistrate's explicit warning that a recommendation of dismissal would result from failure to obey his order is a critical fact that distinguishes this case from those cited by appellant. . . . In view of the warning, the district court had little alternative to dismissal. Any other course would have placed the credibility of the court in doubt and invited abuse." <u>Id.</u> at 95-96.

## B. Discussion

After this case had been stayed and/or deadlines extended numerous times, the undersigned warned Plaintiff on at least two occasions that a failure to comply with the deadline set forth in the Order could or would be dismissed pursuant to Rule 41(b). First, on November 11, 2008, upon Motion by the Plaintiff, the stay was continued until April 15, 2009, and Plaintiff was directed to file responses to the outstanding motions within fifteen days of that date. The undersigned warned that Plaintiff's case be dismissed for failure to prosecute if he did not comply with the deadline. Plaintiff failed to timely respond. The day after Plaintiff's responses were due, Plaintiff filed another Motion

to Extend his response time to June 30, 2009. The undersigned entered an Order denying Plaintiff's Motion but giving him until May 11, 2009, to file his responses. The Order provided that, "if Plaintiff fails to comply with this deadline, it will be recommended that this case be dismissed with prejudice pursuant to rule 41(b)." Furthermore, each Roseboro Order that was entered following the filing of a Motion to Dismiss or Motion for Summary Judgment explicitly stated that if Plaintiff failed to adequately respond to the motion, the motion may be granted, thereby ending the case. Although the Roseboro Orders do not specifically refer to Rule 41(b), Plaintiff was fully aware that a failure to respond to the motions could be detrimental to his case.

According to the Fourth Circuit, the warnings issued by this Court that a failure to respond could result in dismissal are alone sufficient to justify dismissal of this case. Ballard, 882 F.2d at 95-96. Nevertheless, the Court will also address the four Davis considerations set forth above. First, the Court must address Plaintiff's degree of responsibility in failing to respond. Plaintiff was confined in New Jersey from June 12, 2006[6], to October 2, 2006, and April 14, 2008, to April 1, 2009, and the Court liberally granted Plaintiff's request and stayed the case during those periods of time. However, Defendants began filing dispositive motions in this case in February of 2006, and Plaintiff has, to date, failed to respond to the arguments set forth in any of those motions.[7] For the three and almost one half years that motions have been pending in this case, Plaintiff was without his files for approximately one year and four months. Thus, Plaintiff has had approximately two

---

[6]This may not be the actual date of Plaintiff's transfer to New Jersey, but it is the date Plaintiff moved to stay the case in light of such transfer.

[7]Plaintiff did respond to the first Motion to Dismiss filed in this case by Spartanburg County. That Motion is now moot because Spartanburg County has been dismissed from this action (see Document # 203).

years to prepare responses these motions.  Instead, he had filed numerous requests for stays and/or extensions of time.  Even after Plaintiff was released from custody, he continued to request extensions of time.  Thus, Plaintiff is responsible for failing to respond to the dispositive motions and comply with the deadlines set by the Court.[8]

Next, the Court considers the amount of prejudice to Defendants caused by the delay.  Each of the Defendants is highly prejudiced by Plaintiff's failure to respond to their motions.  Defendants have been unable to reach a resolution of the claims against them because of Plaintiff's failure to respond to their motions.  They have been entangled in this litigation for almost four years.

The drawn out history of deliberately proceeding in a dilatory fashion is set forth in lengthy detail in Section II above.

Finally, no sanctions less than dismissal would be appropriate in this case.  While the Court is aware that dismissal pursuant to Rule 41(b) is a drastic measure, Plaintiff leaves the Court with little alternative.  As noted by the Fourth Circuit, "in view of the warning [that dismissal would be recommended if Plaintiff failed to obey the Order], the district court had little alternative to dismissal.  Any other course would have placed the credibility of the court in doubt and invited abuse." Ballard, 882 F.2d at 95-96.  Here, the Court has issued numerous orders with which Plaintiff has failed to comply.

### C.    Conclusion

Thus, in light of this Court's warnings of dismissal (or recommended dismissal) for failure to comply with Court-ordered deadlines, coupled with the Davis factors set forth above, it is

---

[8]The Court does not consider a request, or further request, for an extension of time to be a substantive response to a motion.

recommended that this case be dismissed in its entirety with prejudice pursuant to Rule 41(b), Fed.R.Civ.P.

Should the district judge decline to accept this recommendation, the merits of Plaintiff's claims are discussed below.

## IV. DISPOSITIVE MOTIONS

### A. The Inmate Telecommunications Service Industry

The Evercom Defendants set forth in their Motion to Dismiss (Document # 27) the unique nature of inmate telephone services, which is repeated herein:

> The [Department of Corrections (DOC)] is authorized by statute to enter into exclusive contracts where deemed appropriate. S.C. Code Ann. § 11-35-1560. In addition, Title 24 of the state code states that the Director of the DOC "shall be responsible for the management of the affairs of the prison system and for the proper care, treatment, feeding, clothing and management of the prisoners confined therein." S.C. Code Ann. § 24-1-130. Pursuant to its authority, the DOC, through the Budget & Control Board, conducts the Request for Proposal ("RFP") process to invite competitive bids for inmate telephone service and to award exclusive contracts to the best candidate. The DOC's continued use of RFPs and award of exclusive contracts is clear evidence of the state's adoption of a policy to displace traditional competition to service specific governmental goals.

> Prescribing security requirements for inmate telephone service is a crucial component of this policy. Inmate calls must be restricted to prevent abuse, fraud, and intimidation of judges, witnesses and counsel. Thus, the DOC requires telephone service providers to place technological blocks on certain types of calls, notably three-way calls and call forwarding, in order to prevent such conduct. In addition, they require service providers to block access to calling platforms, such as 1-800-COLLECT, that allow callers to circumvent the software that performs this blocking function.

> The Federal Communications Commission ("FCC") has expressly recognized the unique nature of inmate telephone systems. Due principally to the heightened security requirements described above, the FCC has specifically declined to apply the same regulations to inmate payphone services that it enforces on phones available to the general public. Policies and Rules Concerning Operator Service Providers, CC Docket No. 90-313, Report and Order, 6 FCC Rcd. 2744, 2752 (1991),

> aff'd, <u>Amendment of Policies and Rules Concerning Service Providers and Call Aggregators</u>, CC Docket No. 94-158, 10 FCC Rcd. 1533, 1534-35 (1995). Thus, as a matter of federal law, inmate telephone service providers are permitted to provide call-blocking and other restrictions on inmate calls that would be unlawful if imposed on a public payphone.

Evercom Defendants' Motion to Dismiss (Document # 27) at 2-4.

## B.    Factual Allegations

Plaintiff complains about the contracts in place between the detention centers and service providers named in this action, which provide for the telecommunications systems used by the detention centers for use by the prisoners.  The "inmate phones" are collect call only phones specifically manufactured and designed for use in detention centers.  Generally, the inmate phones do not accept calls to 800 numbers, calling card type facilities nor do they allow for the deposit of any coinage by which to prepay for a telephone call.  The user of an inmate phone has only the ability to place a local or long distance collect telephone call.  The user of an inmate phone does not have the ability to select the service provider or long distance carrier for his telephone call nor does he have any control over what network or at what rate his call is placed.  Complaint at p. 11.

The service providers are in the business of procuring contracts with detention centers to provide inmate phones for the facilities.  The service providers enter into detailed contracts with the detention centers for commissions based upon the use of their phones.  A large portion of the collect call fees, service charges and basic per minute rates are charged to fund the exorbitant rates of commission which are paid to the detention centers.  Detention centers even work perks into their contracts by obtaining from the service providers, for example, software for their booking computers and inmate commissary programs or signing bonuses.  Complaint at p. 19.

Plaintiff alleges that the service providers are allowed the unfettered ability to basically "charge what they may," because there is very little oversight or regulation to the industry in general. Plaintiff complains that the service providers could charge the inmates the same as other, non-prisoner users, but their bottom line would be much smaller and they would not be able to provide the detention centers with the "millions of dollars in unearned and totally unwarranted commissions." He also complains that aside from the "hard-cost" incurred by the service provider (for the actual equipment, local telephone lines, etc.) and the huge commissions paid to the detention centers, the rest is "pure gravy" for the service providers. Their profit "has gone beyond from what would be considered a nominal amount based on the services provided to a true raping of the end-user consumer." Plaintiff also complains that the detention centers are simply looking for points of revenue to assist the funding of overwrought budgets, which they have found in the "cash cow" that is the inmate collect phone call business. He states that there is no justification for the rates that are charged. Complaint at pp. 20-21.

### C. Applicable Standards of Review

#### 1. Liberal Construction Afforded Pro Se Pleadings

Plaintiff is a <u>pro se</u> litigant, and thus his pleadings are accorded liberal construction. <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980); <u>Estelle v. Gamble</u>, 429 U.S.97 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Loe v. Armistead</u>, 582 F. 2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F. 2d 1147 (4th Cir. 1978). <u>Pro se</u> pleadings are held to a less stringent standard than those drafted by attorneys. <u>Hughes</u>, 449 U.S. at 9. Even under this less stringent standard, however, the <u>pro se</u> Complaint is still subject to dismissal pursuant to Rule 12. Liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do

so.  Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), nor should a court "conjure up questions never squarely presented."  Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### 2.    Rule 12(b)(6), Fed.R.Civ.P.

A motion to dismiss under Rule 12 tests the sufficiency of the complaint.  It does not resolve conflicts of facts.  A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. It does not resolve conflicts of facts, the merits of the claim, or the applicability of defenses asserted.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering a motion to dismiss, the factual allegation in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations.  Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,1134 (4th Cir. 1993).

### 3.    Rule 56, Fed.R.Civ.P.

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**.     The State Defendants' Motion to Dismiss (Document # 52) and Plaintiff's Motion to Dismiss the State Defendants (Document # 121)**

On March 22, 2006, the State Defendants filed a Motion to Dismiss, arguing that Plaintiff lacked standing to assert the claims set forth in the Complaint, the allegations are subject to the primary jurisdiction of federal and state regulatory authorities, and Plaintiff's claims are without merit. Plaintiff did not timely file a Response to this Motion.

Subsequently, on August 24, 2007, Plaintiff moved to dismiss the State Defendants without prejudice in accordance with Rule 41(a)(2). Plaintiff asserted that the only Plaintiff to have viable claims against these Defendants was Daniel B. McCracken, who was dismissed from the case by the Court on December 21, 2005. Plaintiff admitted that he had no specific claims and could not maintain an action against these Defendants. Accordingly, Plaintiff lacks standing to assert any claims against the State Defendants and dismissal is proper. Thus, it is recommended that the State Defendants' (South Carolina Department of Corrections, South Carolina Budget and Control Board, and Sprint Payphone Services, Inc.) Motion to Dismiss (Document # 52) be granted and these Defendants be dismissed from this action with prejudice. It is further recommended Plaintiff's Motion to Dismiss (Document # 121) be deemed moot.[9]

---

[9]In the event the district judge declines to adopt the recommendation to grant the State Defendants' Motion, it is recommended that Plaintiff's Motion (Document # 121) be granted and the State Defendants be dismissed without prejudice.

E.      **Remaining Defendants' Motions**[10]

1.      **Filed Rate Doctrine**

All Defendants argue that Plaintiff's claims are barred by the filed rate doctrine.  The filed rate doctrine provides that the rate a public utility or common carrier files with the appropriate regulatory agency is the only legal rate and may not be directly challenged in court. AT&T v. Central Office Telephone, 524 U.S. 214, 223 (1998); Maislin Industries, Inc. v. Primary Steel, Inc., 497 U.S. 116, 126 (1990); Marcus v. AT&T Corp., 138 F.3d 46, 64 (2d Cir. 1998); Porr v. Nynex, 660 N.Y.S.2d 440, 447 (2d Dep't 1997) ("any 'harm' allegedly suffered by the plaintiff is illusory, because he has merely paid the filed tariff rate that he was required to pay").  The doctrine holds that "any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers," and thus bars suits against regulated utilities based on claims that the rates are unreasonable. Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2nd Cir. 1994). This result applies even to antitrust claims if, as is the case here, monetary damages are sought. "While the filed rate doctrine may not bar an anti-trust claim for which injunctive relief is sought, it does bar an antitrust claim for which money damages are sought." Guglielmo v. Worldcom, Inc., 808 A.2d 65, 70 (N.H. 2002).  Plaintiff does not seek injunctive relief. Rather, he seeks millions of dollars in monetary damages.

The Communications Act of 1934, as amended, and South Carolina law require all telecommunications carriers to file tariffs with the FCC and PSC detailing the telecommunications services they offer and the rates applied to those services. See 47 U.S.C. § 203(a); S.C. Code §

---

[10]Defendants raise the same or similar arguments.  Thus, rather than addressing each Motion separately, the remaining portion of this Report and Recommendation will address the arguments raised by Defendants.

58-9-280. These tariffs contain all rates, terms and conditions of service, and may not be varied by any other contract, court action, or unilateral action of the parties. S.C. Code § 58-9-230; 26 S.C. Code Ann. Regs. § 103-603. See also AT&T, 524 U.S. at 226-27 ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.") (citations omitted). Both federal and South Carolina law require telephone companies to charge rates set out in their filed tariffs and specifically forbid (other than in certain inapplicable situations) any deviation – upward or downward – from those tariffed rates. 47 U.S.C. § 203(c); S.C. Code § 58-9-230, 58-9-250.

Plaintiff acknowledges in his Complaint that Evercom and Pay Tel are registered service providers with the State of South Carolina Public Service Commission and have on file valid tariffs[11] to provide telephone services at various county jails and detention centers. See Complaint, ¶¶ 13, 18. However, Plaintiff later complains that the service providers are unregulated:

> In that the actual service providers are allowed the unfettered ability to basically "charge what they may," there is very little oversight or regulation to this industry in general. The Federal Communication Commission formerly regulated the industry through tariffs and other pertinent regulations and in 2002 the FCC de-tariffed the entire industry, which in essence left these service providers to "self-police" their industries themselves. Apparently, this measure has left these service providers "wide-open" to run rampant in this regard. When one looks to the

---

[11]The Evercom Defendants and Defendant Florence County have filed Motions to Dismiss, while the Pay Tel Defendants and Lexington County have filed Motions for Summary Judgment. Only the Pay Tel Defendants have attached a copy of Pay Tel's tariff to their Motion. Nevertheless, the Court may take notice of the fact that Evercom and Pay Tel have approved tariffs on file with the PSC. Marcus v. AT & T Corp., 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) ("Because those tariffs are public documents that [the defendant] is required to file with the FCC, the court may take judicial notice of them ... and as a result may consider them on a Rule 12(b)(6) motion even though not included in, or attached to the complaint."); Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("The court finds that the Plaintiff's phone bill and [the defendant]'s filed tariff fall within this exception [of being referred to in the complaint] and may be considered without converting the motion into one for summary judgment"). Thus, the Court may consider the tariffs without converting the Motions to Dismiss into Motions for Summary Judgment.

> individual state Public Service commission[s] for assistance, there is virtually no enforcement arm which deals with this subject matter. The service providers simply file a tariff with a particular state and "set up shop."

Complaint, p. 20. Plaintiff acknowledges that the service providers file tariffs with the state. His concern is with the alleged lack of oversight by the state Public Service Commission.

First, courts have uniformly held that "the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies." Wegoland, 27 F.3d at 20 (citing Taffet v. Southern Co., 967 F.2d 1483, 1494 (11th Cir. 1992); H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 494 (8th Cir. 1992); Sun City Taxpayers' Ass'n v. Citizens Utils. Co., 847 F.Supp. 281, 289 (D.Conn.1994); Wegoland, Ltd. v. NYNEX Corp., 806 F.Supp. 1112, 1115 (S.D.N.Y.1992)).

Furthermore, the level of review accorded to a particular tariff is irrelevant to application of the doctrine. AT&T, 524 U.S. at 222; Maislin, 497 U.S. at 130. It is the filing and approval – however cursory the review – of the rate that invokes the filed rate doctrine. Square D Co. v. Niagra Frontier Tariff Bureau, 476 U.S. 409, 418 & n.19 (1986). "The heart of the filed rate doctrine is not that the rate mirrors a competitive market, nor that the rate is reasonable or thoroughly researched, it is that the filed rate is the only legal rate." Daleure v. Kentucky, 119 F. Supp. 2d 683, 689 (W.D. Ky. 2000); AT&T, 524 U.S. at 223 ("[T]he rate of the carrier duly filed is the only lawful charge.") (citation omitted). Thus, Plaintiffs' claims that the service providers are unregulated and "self police" are without merit.

Importantly, claims are barred by the filed rate doctrine regardless of whether the attack on any filed rate is explicit or implicit. In Daleure, recipients of inmate-initiated collect calls filed suit against county jails and exclusive-contract telephone companies for antitrust and equal protection violations. Plaintiffs argued that their complaint was not a rate-related claim governed by the filed

rate doctrine but instead a challenge to a "wide range of conspiratorial conduct" of which the rates charged were only one aspect. <u>Daleure</u>, 19 F. Supp. 2d at 690. The court rejected this argument as "clever, yet ultimately disingenuous," because, at bottom, "Plaintiffs' claims revolve around the rates charged." <u>Id.</u>

Similarly, in <u>Byrd v. Goord</u>, No. 00 Civ. 2135, 2005 WL 2086321, at *7 (S.D.N.Y. Aug. 29, 2005), the court dismissed constitutional claims alleging that the exclusive services contract between the New York State Department of Corrections and MCI resulted in excessively high telephone rates to the recipients of inmate collect calls. The <u>Byrd</u> court noted and held,

> Plaintiffs, however, emphasize that they do not seek to challenge the rates filed by MCI with the FCC. In a letter to the Court dated October 19, 2001, counsel for plaintiffs wrote "[t]ime and again, we have made clear that ours is not a case about rates.... Rather, this case is about the single provider/collect call-only system imposed by the Defendants barring the bill payer recipients from using their chosen private provider" (emphasis in original). Despite plaintiffs' contention, cloaking their rate challenge in constitutional cloth is insufficient to defeat the fact that plaintiffs' claims against MCI, at heart, question the reasonableness of the rates charged by MCI. <u>See</u> <u>Daleure</u>, 119 F.Supp.2d at 689-90 (dismissing suit by recipients of inmate collect calls under the filed rate doctrine, finding that "[a]t bottom, [plaintiffs' complaint] is a rate discrimination claim"). Plaintiffs' constitutional claims against MCI are therefore dismissed.

<u>Id.</u>

Plaintiff's specific causes of action challenge the contracts between the Service Providers and the detention facilities. He alleges that these contracts preclude inmates from choosing the service providers they wish to use to place telephone calls. However, a review of the entire complaint reveals that Plaintiff is complaining, not about the lack of choice, but about the alleged usurious rates the end users are forced to pay. He complains that a large portion of the collect call fees, service charges and basic per minute rates are charged to fund the exorbitant rates of

commission paid to the detention centers; the service providers are allowed the unfettered ability to basically "charge what they may;" the service providers' profit is "pure gravy" and "has gone beyond from what would be considered a nominal amount based on the services provided to a true raping of the end-user consumer;" and that the detention centers have found the "cash cow" they have been looking for to assist the funding of overwrought budgets in the inmate collect phone call business. Plaintiff states that there is no justification for the rates that are charged. Clearly, Plaintiff's central complaint with the contracts between the detention centers and the service providers is the rates that result from the contracts and Plaintiff's causes of action revolve around the rates charged. In other words, Plaintiff ultimately is complaining about the rates themselves.

"Even if such a challenge does not, in theory, attack the filed rate," the court explained, "an award of damages to the customer-plaintiff would, effectively, change the rate paid by the customer to one below the filed rate paid by other customers." Hill v. BellSouth Telecomms., Inc., 364 F.3d 1308, 1316 (11th Cir.2004). Therefore any claim that, if successful, would require an award of damages that would have the effect of imposing different rates upon different consumers is barred by the filed rate doctrine. The only relief sought by Plaintiff is an award of monetary damages. Accordingly, this entire action is barred by the filed rate doctrine, and it is recommended that Defendants' motions be granted and this action be dismissed in its entirety.

## 2. State Action Immunity

In the alternative, if the district judge declines to adopt the recommendation that this case be dismissed pursuant to Rule 41(b), Fed.R.Civ.P. or the recommendation that the case be dismissed pursuant to the filed rate doctrine, it is recommended that Plaintiff's antitrust claims be dismissed

pursuant to the state action immunity doctrine and that the court decline to exercise jurisdiction over the remaining state law claims.

All Defendants also argue that Plaintiff's antitrust claims are barred by the state action immunity doctrine. In the seminal case <u>Parker v. Brown</u>, 317 U.S. 341, 352 (1943), the Supreme Court established that state governments cannot be sued under antitrust statutes. Reasoning that "[t]here is no suggestion of a purpose to restrain state action in the [Sherman] Act's legislative history," the Court held that states are immune from antitrust liability where "[t]he state itself exercises its legislative authority in making the regulation and in prescribing the conditions of its application." 317 U.S. at 352. Thus, where the state has articulated a policy to displace competition and has instigated and supervised the displacement of market forces in favor of exclusive state contracts, the state retains immunity from antitrust liability.

The Supreme Court later elaborated upon the <u>Parker</u> concept of state action immunity through a two-part test. State action immunity is assigned where, first, the alleged anticompetitive behavior stemmed from a "clearly articulated and affirmatively expressed . . .state policy," and second, where the "state's policy was actively supervised" by a state actor. <u>California Retail Liquor Dealers Assoc. v. Midcal Aluminum</u>, 445 U.S. 97, 105 (1980); <u>see</u> <u>also</u> <u>City of Lafayette, Louisiana v. Louisiana Power & Light Co.</u>, 435 U.S. 389, 412 (1978).

The first element of the test requires the written, codified, or otherwise express intent by the legislature to displace competitive market forces for procurement of goods and services necessary to further a state goal. <u>Midcal</u>, 445 U.S. at 103; <u>City of Lafayette</u>, 435 U.S. at 412. The second element of the state action doctrine requires demonstration that "the State has exercised sufficient independent judgment and control so that the details of the rates or prices have been established as

-24-

a product of deliberate state intervention[.]" <u>Federal Trade Comm'n v. Ticor Title Ins. Co.</u>, 504 U.S. 621, 634 (1992). Simply put, the state action doctrine requires sufficient systematic state involvement such that the challenged activities can be fairly attributable to the state itself. <u>Ticor</u>, 504 U.S. at 634; <u>City of Lafayette</u>, 435 U.S. at 414.

The prison telephone systems at issue in this case have been established and maintained directly in accordance with state correctional policies. In the Complaint, Plaintiff sets forth that the challenged telephone services are provided under exclusive contracts entered into by the entities that operate the detention centers. State agencies are authorized by statute to enter into exclusive contracts where deemed appropriate. S.C. Code Ann. § 11-35-1560. In addition, state statute provides that the Director of the SCDC "shall be vested with the exclusive management and control of the prison system, and all properties belonging thereto . . . and shall be responsible for the management of the affairs of the prison system … ." S.C. Code Ann. § 24-1-130. Pursuant to its authority, the SCDC, through the South Carolina Budget and Control Board, conducts the Request for Proposal ("RFP") process to invite competitive bids for inmate telephone service and to award exclusive contracts to the best candidate. The SCDC's continued use of RFPs and award of exclusive contracts is clear evidence of the state's adoption of a policy to displace traditional competition to service specific governmental goals. State supervision of the inmate telephone systems is shown in the PSC's continued regulation of the service providers. The rates and practices of inmate phone providers are subject to the review and approval of the PSC under Title 59 of the South Carolina code. This process constitutes precisely what <u>Parker</u> and its progeny require to invoke state action immunity, namely the creation of the "machinery" for displacing competition in

furtherance of a policy goal. <u>Parker</u>, 317 U.S. at 352; <u>see</u> <u>also</u> <u>Midcal</u>, 445 U.S. at 104; <u>City of Lafayette</u>, 435 U.S. at 415.

The state action immunity doctrine established in these cases flows not only to state governments, but also to municipal and local governments, <u>City of Lafayette</u>, 435 U.S. at 413, and to the private parties acting pursuant to and in conformity with the state policy, <u>Southern Motor Carriers Rate Conference, Inc. v. United States</u>, 471 U.S. 48, 56-57 (1985). Where "the State's participation in a decision is so dominant that it would be unfair to hold a private party responsible for his conduct in implementing it," individuals are immune from antitrust liability. <u>Cantor v. Detroit Edison Co.</u>, 428 U.S. 579, 594-95 (1976).

Accordingly, Plaintiff's antitrust claims are barred by the state action immunity doctrine. Thus, it is recommended that Plaintiff's antitrust claims be dismissed. Furthermore, 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). <u>See</u> <u>also</u>, <u>e.g.</u>, <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's remaining state law claims.

## V.     RECOMMENDATION

For the reasons stated above, it is recommended that this case be dismissed in its entirety with prejudice pursuant to Rule 41(b), Fed.R.Civ.P.

**In the alternative**, it is recommended that

(a)     the Evercom Defendants' (Evercom Systems, Inc. and CEO of Evercom Systems, Inc.) Motion to Dismiss (Document # 27) be granted;

(b)     the State Defendants' Motion to Dismiss  (Document # 52) be granted;

(c)     the Pay Tel Defendants' (Pay Tel Communications Inc. and John Vincent Townsend) Motion for Summary Judgment (Document # 61) be granted;

(d)     the Evercom Defendant's second Motion to Dismiss (Document # 78) be deemed moot;

(e)      Defendant Florence County's Motion for Summary Judgment (Document # 82) be granted;

(f)     Defendant Lexington County's Motion for Summary Judgment (Document # 83) be granted; and

(g)     Plaintiff's Motion to Dismiss (Document # 121) be deemed moot[12];

and this action be dismissed with prejudice in its entirety pursuant to the filed rate doctrine.

**In the alternative**, it is recommended that the motions set forth above be granted (or deemed moot, as appropriate) as to Plaintiff's federal antitrust claims pursuant to the state action immunity

---

[12]In the alternative, if the district judge declines to adopt the recommendation to grant the State Defendants' Motion to Dismiss, it is recommended that Plaintiff's Motion to Dismiss (Document # 121) be granted and the State Defendants be dismissed without prejudice.

doctrine, that the Court decline to exercise jurisdiction over Plaintiff's state law claims, and the case be dismissed it its entirety.[13]

                                        s/Thomas E. Rogers, III
                                        Thomas E. Rogers, III
                                        United States Magistrate Judge

August 11, 2009
Florence, South Carolina

   **The parties' attention is directed to the important information in the attached notice.**

---

[13]Any remaining moots should be deemed moot.